**IN THE COURT OF APPEALS OF IOWA**

No. 21-1308
Filed December 15, 2021

**IN THE INTEREST OF H.L.,**
**Minor Child,**

**S.L., Mother,**
      Appellant.

_____

      Appeal from the Iowa District Court for Dallas County, Virginia Cobb, District

Associate Judge.

      A mother appeals from the termination of her parental rights.  **AFFIRMED.**

      Donna M. Schauer of Schauer Law Office, Adel, for appellant mother.

      Thomas J. Miller, Attorney General, and Meredith Lamberti, Assistant

Attorney General, for appellee State.

      Kayla Stratton, attorney and guardian ad litem for minor child.

      Considered by Bower, C.J., and Greer and Badding, JJ.

**GREER, Judge.**

The mother, S.L., appeals from the termination of her parental rights to her child, H.L.,[1] born in 2018.  On appeal, she first contests the grounds for termination.  Likewise, S.L. argues that the State did not make reasonable efforts to reunite her and H.L.  Finally, she contends that the juvenile court erred by not considering statutory factors under Iowa Code section 232.116(3) (2021) that would avoid termination and argues for a guardianship to be established in lieu of termination.

**Background facts and prior proceedings.**

The Iowa Department of Human Services (DHS) became involved with H.L. in February 2020 when it was discovered that his mother was using methamphetamine.  H.L. was originally placed with his maternal grandfather, but he was removed from that home in May after it was discovered that the grandfather had outstanding warrants related to methamphetamine.  Eventually, H.L. was placed with his maternal aunt, who had guardianship of three of S.L.'s older children[2] and lives just over an hour from S.L.  A contested adjudication occurred in July, but the mother did not attend.  After that hearing, H.L. was adjudicated a child in need of assistance.

S.L. has a history of drug use.  She entered residential treatment in October 2020, but left after two days.  In December, a contested disposition hearing was held, but S.L. did not attend and her whereabouts were unknown.  To her credit, she tried treatment again in January 2021 but again left against recommendation—

---

[1] J.L., H.L.'s father, also had his parental rights terminated in the proceedings.  He does not appeal.

[2] These older children were ages ten and older.

this time after two months.[3]  S.L. had another child in April 2021; this child's umbilical cord came back positive for methamphetamine, amphetamines, and tetrahydrocannabinol (THC).  As recently as June 2021, S.L. was not compliant with drug testing.

DHS had concerns outside of S.L.'s drug use.  One was S.L.'s housing.  At the time of the termination hearing, she was either living in her van in Des Moines or with her father who had already been deemed an unsafe placement for H.L.  And, not long before the termination hearing, S.L. and her paramour were arrested for assault with a dangerous weapon.  S.L. was given probation while her paramour was incarcerated.  S.L.'s past criminal history included a number of drug charges, probation violations, and a charge for being a felon in possession of a firearm.

A termination and permanency hearing was held over two days.  On the first day of trial in July 2021, the DHS caseworker testified that S.L. attended approximately six visits with H.L. during the fifteen-month duration of the case.  The Family Centered Services (FCS) provider testified that while H.L. recognizes his parents, it is unclear that there is a bond between them.  S.L.'s communication was sporadic with months passing between interactions.  S.L. did not testify on her own behalf, though she asked that the court put H.L. under a guardianship with a family member to give S.L. more time to turn the situation around.

In the second day of testimony held in August 2021, S.L. decided she wanted to testify.  For the first time, S.L. alerted the juvenile court that she had not

---

[3] S.L. testified she left treatment because her insurance was not going to cover her time there and she was unaware that state assistance might be available.

been afforded proper services. S.L. did not have a driver's license and struggled to get transportation to visits with H.L.—the child was living an hour drive from Des Moines and a half hour from S.L.'s father's house. Though she had been given gas cards, she argued they were not appropriate help as she could not drive herself.[4] Her newborn child had been placed in Des Moines and, with the more convenient location, she had been far more successful in participating in visits. S.L. also testified that the suggested housing options willing to accept someone with a felony record were outdated and not helpful. She further told the court that she had recently completed a new substance-abuse evaluation, had been put on a waitlist for mental-health counseling, and had attended three out of six visits since the court's previous hearing. This time, she asked the court to place H.L. back with his grandfather to give her more time.

The juvenile court terminated S.L.'s parental rights on September 1, 2021. S.L. timely appealed.

**Analysis**

When considering a termination of parental rights, our standard of review is de novo. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We give weight to, though are not bound by, the juvenile court's findings of fact, particularly toward the credibility of witnesses. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Here, S.L.'s parental rights were terminated under Iowa Code section 232.116(1)(b) and

---

[4] At the first day of trial, DHS providers testified that they had been transporting the child's father to visits. S.L. testified that this option was not offered to her.

(e) (2021).[5]  We do not need to address both grounds for termination because "[w]hen the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."  *In re A.B.,* 815 N.W.2d 764, 774 (Iowa 2012).  We engage in a three-step process.  *See P.L.,* 778 N.W.2d at 39.  First, we examine if a ground for termination exists under section 232.116(1).  *Id.*  Because we find S.L. did not make a genuine effort to maintain significant and meaningful contact with the child, the State proved by clear and convincing evidence termination was warranted under section 232.116(1)(e).  Yet on appeal, rather than address the substantive elements of this ground, S.L.'s contentions take a "failure to provide reasonable effort" turn to explain why the child could not be returned to her.  *See In re C.B.,*

---

[5] To terminate the mother's parental rights under Iowa Code section 232.116(1)(b), the State must show by clear and convincing evidence "that the child has been abandoned or deserted."

To terminate the mother's parental rights under Iowa Code section 232.116(1)(e), the State must show by clear and convincing evidence that all of the following have occurred:

(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.

(3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so.  For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent.  This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

611 N.W.2d 489, 493 (Iowa 2000) ("[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by DHS to reunify the parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts."). As for her claim the State failed to make reasonable efforts to reunite the family, the mother failed to preserve the issue for appeal as she did not object to any lack of services until the termination proceeding. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) ("[P]arents have a responsibility to object when they claim the nature or extent of services is inadequate."); *see also In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) ("In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding. . . . [V]oicing complaints regarding the adequacy of services to a social worker is not sufficient. A parent must inform the juvenile court of such challenge."). Though S.L. attests that she made her concerns known to DHS and FCS workers, she did not raise them to the court's attention until the termination-of-parental-rights hearing. As such, the issue is considered waived.

Based on the record before us, S.L. neither made reasonable efforts to resume care of the child nor maintained significant and meaningful contact with H.L. At the core, S.L. never made progress defeating her addictions. She started but left substance-abuse treatment programs and, at the time of the termination hearing, had yet to complete a program. There was no extended proven period of sobriety for the mother. In like manner, S.L. failed to address or engage in mental-health treatment. And even more, the mother demonstrated a lack of commitment to the child by failing to maintain visits or contact.

Generally, step two of the process is to consider whether termination of parental rights is in the best interest of the child. *See* Iowa Code § 232.116(2) ("[T]he court shall give primary consideration to the child's safety, to the best placement for long-term nurturing of the child, and to the physical, mental, and emotional condition and needs of the child."). But here, we find S.L. failed to develop a legal argument disputing that loss of her rights is in H.L.'s best interests, so we need not specifically address it. *See* Iowa R. App. P. 6.903(g)(3); *see also P.L.*, 778 N.W.2d at 40.

In the third step of our termination analysis, we consider if there are permissive exceptions to termination that might apply. *See P.L.*, 778 N.W.2d at 39. S.L. asserts the court erred in not considering the statutory factors listed in Iowa Code section 232.116(3), which give the court discretion to not terminate. Here, the two factors S.L. points to are section 232.116(3)(c), which allows the court to forego termination if the bond between parent and child is so strong that to terminate would be detrimental to the child, and section 232.116(3)(a), which is implicated if the child is placed in the legal custody of a relative. "'The factors weighing against termination in section 232.116(3) are permissive, not mandatory,' and the court may use its discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (citation omitted).

In its order for termination, the court found "there [was] no evidence that termination would be detrimental to the child due to the closeness of the parent-child relationship." On our de novo review, we agree. S.L. has been largely absent

from her child's life. The child has acclimated to his current placement with his aunt and siblings and was said to be "very content, very happy" in the home. No evidence of the closeness of the bond between mother and child was developed.

In regards to H.L.'s placement with a relative, the exception in section 232.116(3)(a) is only implicated when a relative has legal custody of the child. *See A.M.*, 843 N.W.2d at 113. And here, DHS retained legal custody of the child at the time of the termination hearing; section 232.116(3)(a) is inapt.

The mother also briefly argues that, instead of termination, we should establish a guardianship under Iowa Code section 232.104(2)(d). *See also* Iowa Code § 232.117(5) ("If after a hearing the court does not order the termination of parental rights but finds that there is clear and convincing evidence that the child is a child in need of assistance, . . . the court may adjudicate the child to be a child in need of assistance and may enter an order in accordance with the provisions of section . . . 232.104."). To do so, the court must find that termination is not in the best interests of the child. *Id.* § 232.104(2)(d)(1), 232.104(4)(a). The court here found termination was in the child's best interests, and the mother has not made an argument in her petition on appeal for us to find otherwise. Further, "a guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (citation omitted).

**Conclusion.**

We affirm the juvenile court's order for the termination of S.L.'s parental rights.

**AFFIRMED.**